# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CROWNED HEADS, LLC, )<br>)<br>    **Plaintiff,** )<br>)<br>) <br>)<br>**v.** )<br>)<br>**THE NATIONAL GRANGE OF THE** )<br>**ORDER OF PATRONS OF HUSBANDRY,** )<br>)<br>    **Defendant.** ) | **Case No. 3:12-cv-1062**<br>**Judge Trauger** |

## MEMORANDUM

Pending before the court is the defendant's Motion to Dismiss Declaratory Judgment Action Under Fed. R. Civ. P. 12(b)(1) or Under the Court's Discretion (Docket No. 14), to which the plaintiff has responded (Docket No. 24), and the defendant has filed a reply (Docket No. 29). For the reasons discussed herein, the defendant's motion will be denied.

## BACKGROUND

The plaintiff, Crowned Heads, LLC ("Crowned Heads"), is a Nashville, Tennessee-based cigar company that formulates, markets, and sells premium cigars.[1] One of its products is named "HEADLEY GRANGE" and is marketed to sophisticated cigar purchasers. The inspiration behind this product's name came from a portion of a song recorded by the rock group Led Zeppelin at an English estate called Headley Grange.[2]

---

[1] Unless otherwise noted, the facts are drawn from the plaintiff's Complaint and the exhibits attached thereto. (Docket No. 1.)

[2] The Complaint does not specify which Led Zeppelin song served as the inspiration for the product's name.

1

On February 20, 2012, Crowned Heads filed an intent-to-use application with the United States Patent and Trademark Office ("USPTO") to register the trademark HEADLEY GRANGE in connection with cigars. On April 3, 2012, the defendant, the National Grange of the Order of Patrons of Husbandry (the "Grange"), sent a cease and desist letter to Crowned Heads' counsel. (Docket No. 26, Ex. B.) The Grange is a nonprofit agricultural organization based in Washington, DC that has members throughout the United States. (*Id.*)

In its letter, the Grange stated that it is the owner of "a number of valid, incontestable U.S. Trademark Registrations for its GRANGE trademarks,"[3] which have long been used "in interstate commerce in connection with a variety of agricultural goods and services." (Docket No. 26, Ex. B.) After noting that its marks had become famous and well-known across the United States, the Grange wrote:

> Registration and/or use of the GRANGE mark in the United States on an agricultural product such as cigars conveys the false impression that your client or its product is affiliated, sponsored, or approved by the Grange. Although your client apparently contends that it meant HEADLEY GRANGE to refer to a British a [sic] recording studio, the fact is that it seeks to register and use the GRANGE mark in the United States, where the name "Grange" is popularly understood to refer to the National Grange and its local Granges . . . . Thus, your client's unauthorized use of the GRANGE mark in the United States in connection with a tobacco product would not only cause a likelihood of confusion with the GRANGE trademarks, but would dilute the GRANGE Trademarks by blurring and tarnishment.
>
> We therefore strongly urge that your client withdraw application no. 85/547,248 and refrain from using the GRANGE mark in commerce in the United States. The Grange would oppose any application and object to any use of its GRANGE Trademarks in commerce in the

---

[3] The letter specified that the Grange owned trademark registrations for the following marks: GRANGE, NATIONAL GRANGE, THE GRANGE FOUNDATION, and NATIONAL GRANGE OF THE ORDER OF PATRONS OF HUSBANDRY. (Docket No. 26, Ex. B.)

United States.

(*Id.*) In concluding the letter, the Grange requested counsel to discuss the matter with his client and advise whether the present dispute could be resolved amicably through the adoption of an alternative mark. (*Id.*)

After receiving the Grange's letter, Crowned Heads pressed forward with its application, which was approved by a USPTO examining attorney and published for opposition in the agency's *Official Gazette* on July 10, 2012. Crowned Heads introduced HEADLEY GRANGE cigars for sale in August 2012. On September 7, 2012, the Grange filed a Notice of Opposition with the USPTO's Trademark Trial and Appeal Board ("TTAB"), an administrative body that is charged by statute with adjudicating trademark registration disputes, *see* 15 U.S.C. § 1067, claiming that it would be damaged by the registration of the HEADLEY GRANGE mark. In its opposition, the Grange asserted that: (1) goods bearing Crowned Heads' proposed HEADLEY GRANGE mark would cause a likelihood of confusion, mistake or deception; (2) registration and use of the HEADLEY GRANGE mark would dilute its GRANGE marks; and (3) the proposed HEADLEY GRANGE mark falsely suggests a connection to the Grange.

In its Complaint, Crowned Heads references sections of the Grange's website detailing its trademark protection strategy. For instance, in a section of its website containing its 2011 Trademark Report, the Grange noted that it saw a shift in the infringement activities it encountered and it thus "focused on attempts by smaller businesses to use [its] trademarks without permission." http://www.nationalgrange.org/about-us/trademark (last visited April 2, 2013). The report also stated that, over the past four years, the Grange had "cleared and won more tha[n] 50 trademark infringement cases, or an average of more than one per month." *Id.* It

added that the Grange recently filed a federal lawsuit for damages and injunctive relief against a small business that failed to either enter a licensing agreement or cease using the Grange's marks. *Id.* While the report noted that filing a federal suit to protect its trademark rights constituted the last resort, the Grange nonetheless stated that it would "continue to vigorously defend [its] trademark rights using all resources at [its] disposal." *Id.*

Another section of its website entitled "Trademark FAQs" addresses the recommended course of action for a business owner who receives an "infringing letter." http://www.nationalgrange.org/about-us/trademark/trademark-faqs/ (last visited April 2, 2013). It states that an owner who has received "what is known as a Cease and Desist letter from the National Grange should take this letter seriously and move to address the concerns addressed in the letter in a timely manner. Failure to do so could directly lead to litigation in federal court." *Id.*

As a result of the Grange's alleged conduct and communications, Crowned Heads asserts that it filed this declaratory-judgment action because it believed that its use of the HEADLEY GRANGE mark on cigars would spur a lawsuit by the defendant. (Docket No. 26.) Crowned Heads commenced this action on October 16, 2012, seeking declaratory and injunctive relief. Among other things, it seeks a declaration from this court that: (1) its use of the mark HEADLEY GRANGE on cigars does not infringe upon or otherwise violate the Grange's rights under any federal or state law; (2) its use of the mark HEADLEY GRANGE is not likely to cause confusion with the defendant's GRANGE marks, does not dilute those marks, and does not cause any injury; and (3) it has the right to seek registration of the HEADLEY GRANGE mark from the USPTO without opposition from the Grange. On Crowned Heads' motion, the TTAB suspended

4

the pending opposition proceeding in an order issued on November 19, 2012.[4] The Grange filed the present motion on December 12, 2012. (Docket No. 14.)

## ANALYSIS

**I.  Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of lawsuits for lack of subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading . . . [and the court] takes the allegations in the complaint as true." *Id.* In contrast, when a party makes a factual attack, "no presumptive truthfulness applies to the allegations" made in the complaint. *Id.* If such an attack "raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Id.* "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Id.* When a defendant challenges the court's subject matter jurisdiction through a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that such jurisdiction exists. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

The Grange does not state whether it is making a facial or factual attack in its Rule 12(b)(1) motion. However, in the course of briefing the jurisdictional issue, the parties have cited

---

[4] This information was obtained through a search performed on "TTABVUE," the USPTO's Trademark Trial and Appeal Board Inquiry System. *See* http://ttabvue.uspto.gov/ttabvue/v?pno=91206899&pty=OPP (last visited April 2, 2013).

allegations appearing in the Complaint as well as extrinsic evidence. The court will accordingly construe the motion as representing a factual attack on subject matter jurisdiction.[5]

## II. The Defendant's Motion

In its motion, the Grange asserts that dismissal of this declaratory-judgment action is warranted on two grounds. First, it contends that the plaintiff has failed to carry its burden of establishing subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. (Docket No. 15 at 4-12.) Specifically, the Grange asserts that this court lacks subject matter jurisdiction because there is no controversy between the parties regarding the issue of infringement. (*See* Docket No. 15 at 11-12; Docket No. 29 at 1.) Second, the Grange argues that, even if this court possessed subject matter jurisdiction over the present case, it should nonetheless exercise the discretion afforded to it under the Declaratory Judgment Act to dismiss this action. (*Id.* at 12-16.)

In its opposition brief, Crowned Heads argues that this court possesses subject matter jurisdiction over its declaratory judgment claims. (Docket No. 24 at 1.) In particular it contends that the Grange's April 3, 2012 cease and desist letter, Notice of Opposition filed with the TTAB, and website statements, taken together with the current and ongoing sale of cigars bearing the HEADLEY GRANGE mark, demonstrate the existence of a justiciable case or controversy. (*Id.* at 13.) Crowned Heads also argues that the court should exercise its discretion under the Declaratory Judgment Act to hear this case because a declaratory judgment would serve a useful purpose and would afford relief from uncertainty. (*Id.* at 14.)

---

[5] In a footnote appearing in its opposition brief, Crowned Heads asserted that the Grange's motion represented a factual attack on subject matter jurisdiction. (Docket No. 24 at 2, n. 1.) The Grange did not dispute this assertion in its reply brief. (*See* Docket No. 29.)

### A. Subject Matter Jurisdiction

The Declaratory Judgment Act states that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has explained that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). In *MedImmune*, the Supreme Court noted that its prior decisions have not drawn "the brightest of lines" separating those declaratory- judgment actions that meet the case-or-controversy requirement from those that do not. *Id.* at 127. It explained, however, that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Indeed, a dispute must be

> definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* (internal citations, quotation marks, and alterations omitted). In the process of framing the appropriate inquiry, *MedImmune* rejected a previous test applied by lower courts requiring a declaratory judgment plaintiff to establish a "reasonable apprehension of suit." *Id.* at 132, n.11; *see also Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1241-42 (10th Cir. 2008); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed Cir. 2007).

Applying these considerations to the instant case, the court finds that Crowned Heads has met its burden to show that, based on the facts alleged, an actual controversy as to whether it has infringed the Grange's marks exists under the Declaratory Judgment Act. The record shows that, after Crowned Heads filed an intent-to-use application to register the HEADLEY GRANGE mark in connection with cigars, it received a cease and desist letter from the Grange. In its letter, the Grange noted that it was the owner of a number of valid, incontestable registrations for its GRANGE marks. Among other things, the letter stated that Crowned Heads' unauthorized use of the HEADLEY GRANGE mark in connection with cigars would not only cause a likelihood of confusion with the GRANGE marks, but would also dilute those marks by blurring or tarnishment. Thus, in essence, the Grange asserted that Crowned Heads' proposed sale of cigars bearing the HEADLEY GRANGE mark would constitute infringement and would otherwise violate the Grange's trademark rights protected under the Lanham Act. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007) ("The touchstone of liability [for trademark infringement] is whether the defendant's *use* of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties") (emphasis added); 15 U.S.C. § 1125(c) (outlining circumstances under which a trademark owner may seek injunctive relief for dilution of a mark).

The cease and desist letter also impliedly threatened litigation. Indeed, it strongly urged Crowned Heads not only to withdraw its application for registration, but also to refrain from using the GRANGE mark in interstate commerce. It further noted that the Grange would not only oppose any application for registration, but that it would also object to any commercial *use* by Crowned Heads of its GRANGE mark. Because an administrative opposition proceeding can only resolve issues pertaining to trademark registration, as opposed to questions concerning use

and infringement, *see* 15 U.S.C. § 1067; Trademark Trial and Appeal Board Manual of Procedure § 102.01, it is reasonable to infer that the Grange's pledge to object to any use by Crowned Heads of its GRANGE mark constituted an implied threat of an infringement suit.

Despite the clear import of the cease and desist letter, Crowned Heads nevertheless continued with its application, securing approval in July 2012, and introduced cigars bearing the HEADLEY GRANGE mark for commercial sale the following month. In September 2012, the Grange filed its notice opposing registration of the HEADLEY GRANGE mark, alleging that the mark would cause a likelihood of confusion and would otherwise dilute the GRANGE marks. Crowned Heads initiated this action shortly thereafter, maintaining that its activities do not infringe upon or otherwise violate the Grange's trademark rights.

From these facts, it is evident that there is an actual controversy between the parties concerning the issue of infringement. The controversy between the parties is substantial because it touches upon each party's ability to promote their commercial interests through the use of their respective marks. Both parties also have adverse legal interests because they have taken opposing positions concerning Crowned Heads' ability to use the HEADLEY GRANGE mark on the cigar products it sells. Moreover, the controversy is sufficiently immediate and real, as evidenced by Crowned Heads' sale of cigars bearing the HEADLEY GRANGE mark notwithstanding the Grange's prior charge that such use would violate its trademark rights and its implied threat of litigation.

Statements made by the Grange in certain sections of its website confirm the immediacy and reality of the dispute. For instance, the Grange noted in its 2011 Trademark Report that: (1) a shift in the infringement activities it encountered led it to focus on attempts by small businesses to engage in unauthorized use of its trademarks; (2) it had cleared and won more tha[n] 50

infringement cases over the past four years; (3) it recently brought a federal suit against a third-party to protect its trademark rights; and (4) while filing such a suit represented a last resort, it would nonetheless vigorously defend its rights using all available resources. The "Trademark FAQs" section of its website implied to business owners that the receipt of a cease and desist letter was tantamount to facing a charge of infringement that should be taken seriously. It added that a failure to timely address the concerns raised in such a letter could directly lead to litigation in federal court.

Accordingly, having reviewed the totality of the circumstances, the court finds that a definite and concrete dispute exists between the parties that would "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (internal citations, quotation marks, and alterations omitted). Thus, it has subject matter jurisdiction to hear Crowned Heads' declaratory judgment claims.

The Grange contends that its cease and desist letter never averred infringement or threatened litigation, but merely urged Crowned Heads to withdraw its application for registration and resolve the matter amicably. (Docket No. 29 at 3.) Thus, the Grange posits that there was "nothing to evoke a real and reasonable apprehension of impending litigation." (*Id.*) However, this contention is unavailing.

As the court has already stated, *MedImmune* does not require a plaintiff to show that it possessed a reasonable apprehension of impending litigation to demonstrate the existence of a justiciable controversy. 549 U.S. at 132, n.11. Nonetheless, even if such a showing were required, the Sixth Circuit has previously noted in a patent infringement case that a reasonable apprehension need not result from express charges or threats. *See Robin Prods. Co. v. Tomecek*,

465 F.2d 1193, 1195 (6th Cir. 1972) ("[A] justiciable controversy is made out upon plaintiff's showing of any indirect or implicit or covert charge of infringement or threat of suit or . . . any course of action from which any charge or threat could be inferred") (internal citations, quotation marks, and alterations omitted); *see also* 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32.51 (4th ed.) (noting that, under the reasonable apprehension of suit test, a threat of infringement need not be express, but instead can be made in "circumspect language" appearing in a letter). Here, the charge of infringement and threat of litigation were clearly implied from the letter's language. There is also no evidence in the record indicating that the Grange has withdrawn this charge and threat. Nor does the letter's reference to resolving the matter amicably undermine Crowned Heads' reasonable apprehension of suit. Indeed, the letter made clear that any amicable resolution was premised upon Crowned Heads choosing another mark, which was an option it declined, thus leaving open the very real possibility of a less amicable resolution through an infringement action.[6]

The Grange next argues that the infringement actions against third parties that were referenced on its website were all resolved amicably. (Docket No. 29 at 4.) However, even if that were true, it would not make the controversy between these parties any less real, given the

---

[6] The court also finds unavailing the Grange's contention that its failure to file an infringement suit after Crowned Heads began selling HEADLEY GRANGE cigars in August 2012 demonstrates the lack of a justiciable controversy. (*See* Docket No. 29 at 4.) The charge of infringement and threat of litigation implied in the April 2012 cease and desist letter continued to loom over Crowned Heads after it began using the HEADLEY GRANGE mark in connection with cigar sales. If anything, the threat became even more substantial at that point. Moreover, the court has already noted that there is no indication that the Grange has ever withdrawn its charge of infringement or threat of suit. *See Surefoot*, 531 F.3d at 1246 (rejecting an argument that the passage of six years since the defendant charged infringement and threatened suit had dissipated the parties' controversy because the defendant had "never withdrawn its allegations of ongoing infringement (or its threats to sue)").

language of the Grange's cease and desist letter, the statements appearing on its website, and Crowned Heads' decision to nonetheless engage in commercial use of the HEADLEY GRANGE mark. Again, there is no indication in the record that the Grange has withdrawn the charge of infringement and threat of litigation that it previously implied. In sum, the totality of the circumstances reveals that the dispute between the parties is definite and concrete. The Grange's historical settlement activity does not alter this fact. Thus, this contention is without merit.[7]

The Grange also contends that its commencement of opposition proceedings before the TTAB cannot, by itself, create a justiciable case or controversy. (Docket No. 29 at 5-8.) However, this argument must also fail, because the court's jurisdictional finding is not solely predicated upon the Grange's filing of such proceedings. Instead, it is based on *MedImmune's* direction to investigate the totality of the circumstances, which, in this case, reveals that, at the time the Notice of Opposition was filed in September 2012, the threat of an infringement action was already looming over Crowned Heads. Indeed, it is reasonable to infer that the commencement of opposition proceedings made that threat even more real. *See Jeffrey Banks Ltd. v. Jos. A. Bank Clothiers, Inc.*, 619 F.Supp. 998, 1002 (D.Md. 1985) (finding actual controversy where defendant's cease and desist letter alleging a violation of its trademark rights and directing plaintiff to immediately cease and desist from using its trademark cast a "threatening shadow . . . [that was] . . . made more ominous by the notice of opposition"). Other courts have similarly considered opposition proceedings before the TTAB, in combination with threats of an infringement action, in finding the existence of a justiciable case or controversy.

---

[7] For similar reasons, the court also finds without merit the Grange's contention that this dispute is non-justiciable by virtue of its historical practice of filing and resolving opposition proceedings in the TTAB whenever possible. (*See* Docket No. 29 at 4-5.)

*See, e.g., Surefoot*, 531 F.3d at 1247 (concluding that subject matter jurisdiction existed where there were five separate opposition proceedings before the TTAB "combined with an extensive history of interactions between the parties in which the declaratory defendant expressly and repeatedly suggested historical and existing infringement activity by the declaratory plaintiff"); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396-97 (9th Cir. 1982) (finding that an actual controversy existed under the reasonable apprehension of suit test, where a notice of opposition was filed in combination with a letter threatening an opposition filing and stating a prima facie case for trademark infringement); *Blue Athletic, Inc. v. Nordstrom, Inc.*, No. 10-cv-036-SM, 2010 WL 2836303, at *4 (D.N.H. July 19, 2010) (finding actual controversy where the defendant sent two demand letters setting out a prima facie case of infringement and filed a Notice of Opposition "steeped in the language of trademark infringement"); and *HSI IP v. Champion Window Mfg. & Supply Co.*, 510 F.Supp.2d 948, 956 (M.D. Fla. 2007) ("While [the defendant] is correct that the filing of a TTAB action is not, on its own, sufficient to create an actual controversy, such is not the issue in this case where it is undisputed that in addition to filing an opposition in the TTAB proceedings, [the defendant] sent correspondence to [the plaintiff] suggesting it would sue if its [infringement] concerns 'could not be settled on an amicable basis'").

Accordingly, for the reasons expressed above, the court will deny the Grange's motion to dismiss for lack of subject matter jurisdiction.

### B. Discretionary Dismissal Pursuant to the Declaratory Judgment Act

Although the court possesses subject matter jurisdiction over this action, the Declaratory Judgement Act nonetheless provides it with discretion to exercise that power. *See* 28 U.S.C. § 2201(a) (stating that a court "*may* declare the rights and other legal relations of any interested

party seeking such declaration") (emphasis added). The Sixth Circuit has enumerated a list of factors that district courts should consider when evaluating whether to hear a declaratory judgment claim. *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). These factors include:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.*

Reviewing each of these five factors, the court believes that the instant case is appropriate for declaratory judgment. First, the instant action, concerning the issues of infringement, dilution, and registration, would settle the controversy between the parties and serve a useful purpose in clarifying the legal relations in issue. Indeed, a resolution of the action will determine whether Crowned Heads' use of the HEADLEY GRANGE mark infringes upon or otherwise dilutes the defendant's GRANGE marks. It will also determine whether Crowned Heads accordingly has the right to obtain registration of the HEADLEY GRANGE mark without further interference from the defendant.

Next, the court does not find that Crowned Heads has used this action as a means of "procedural fencing" or as "an arena for a race for res judicata." Instead, the facts presented to the court demonstrate that Crowned Heads risked facing an infringement suit because it used the HEADLEY GRANGE mark in commerce without the Grange's authorization. It thus filed this

14

action to resolve the uncertainty of whether its actions were lawful.[8]  Moreover, as no parallel state action is pending, there is minimal risk of friction between federal and state courts.

Finally, the presence of a better or more effective alternative remedy is lacking. Although the Grange argues otherwise, the pending opposition proceeding does not constitute a better or more effective alternative to this action because the TTAB lacks the power to resolve disputes concerning trademark infringement.  *See* 15 U.S.C. § 1067; Trademark Trial and Appeal Board Manual of Procedure § 102.01.  Instead, it only has jurisdiction to address issues pertaining to the registration of trademarks.  *Id.*  Citing a leading commentator in the field of trademark law, the Grange asserts that "[t]he courts have, as a matter of policy, stopped litigants from short-circuiting the TTAB administrative process with declaratory lawsuits." (Docket No. 15 at 13) (citing 6 McCarthy on Trademarks and Unfair Competition § 32:53).  However, the cited section of the treatise contains an important caveat, as it notes that, "[w]here an administrative proceeding is already under way, the courts should not short-circuit the proceeding by entertaining a suit for declaratory judgment *unless there are independent grounds such as a threat of infringement litigation.*"  *Id.* (emphasis added).  In another section, the commentator also explained:

> If the declaratory plaintiff presents issues of infringement of the federally registered mark (and unfair competition claims as well perhaps) which cannot be heard by an administrative tribunal of limited powers, judicial efficiency would require that a federal court hear *all* the claims of plaintiff in one case, although some of these claims might be within the aegis of the Patent and Trademark office.

---

[8] Given the circumstances of this case, the court also finds unavailing the Grange's argument that the filing of this declaratory-judgment action amounted to an exercise of forum shopping.  (Docket No. 29 at 10.)

15

*Id.* § 32.55. Again, as the facts here present a concrete dispute concerning infringement, which cannot be heard by the TTAB, the court believes it would be better and more efficient to hear all of the plaintiff's claims via this declaratory judgment proceeding. Accordingly, the Grange's motion for discretionary dismissal of this action pursuant to the Declaratory Judgment Act will be denied.

## CONCLUSION

For all of the reasons discussed herein, the defendant's Motion to Dismiss Declaratory Judgment Action Under Fed. R. Civ. P. 12(b)(1) or Under the Court's Discretion (Docket No. 14) will be **DENIED**.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge